IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SABIA LANDSCAPING,<br>          Plaintiff,<br><br>     v.<br><br>MERCHANTS MUTUAL INSURANCE CO.,<br>          Defendant. | CIVIL ACTION<br><br><br><br><br>NO. 13-3820 |

DuBois, J.                                                                                              November 6, 2013

**M E M O R A N D U M**

**I.     INTRODUCTION**

Plaintiff, Sabia Landscaping ("Sabia"), has brought suit against its insurer, Merchants Mutual Insurance Company ("Merchants"), seeking a declaratory judgment establishing Merchants's duty to defend Sabia in an underlying tort action and, if necessary, to indemnify it for any damages for which it is found liable. Sabia also asserts claims for breach of contract and bad faith as a result of Merchants's denial of Sabia's insurance claim.

Before the Court is Merchants's Motion to Dismiss plaintiff's Complaint. Merchants argues that it does not have a duty to defend or indemnify Sabia because Sabia's insurance contract does not cover the claims asserted in the underlying tort action. For the reasons stated below, the Court denies Merchants's motion.

**II.    FACTS[1]**

On December 20, 2009, Tucker Gunderson slipped and fell on a patch of ice in the parking lot outside his condominium. Compl. in Civil Action ¶ 10, *Gunderson v. Westwyk*

---

[1] As required on a motion to dismiss, the Court takes all plausible factual allegations contained in Sabia's Complaint, the Gunderson Complaint, and the Westwyk Joinder Complaint to be true. *See infra* note 2.

*Condo. Ass'n*, No. 2011-09569 (Ct. Com. Pl. Oct. 28, 2011) [hereinafter Gunderson Compl.]. Seeking relief for injuries he suffered as a result of that fall, Gunderson brought suit against his condominium association, Westwyk Condominium Association ("Westwyk"), alleging, *inter alia*, that the association and/or its agents were negligent in failing to "prevent" or "timely remove" ice accumulations or warn the public of slippery conditions. *Id.* ¶ 20 (a), (g).

On December 5, 2011, Westwyk joined Sabia as a "third-party defendant"[2] in the Gunderson action, alleging that Sabia was under contract with Westwyk to perform snow and ice removal and that Sabia's negligence in performing such duties caused Gunderson's injuries. Def.'s, Westwyk Condo. Ass'n and Cont'l Prop. Mgmt., Inc.'s Am. Joinder Compl. Against Sabia Landscaping Pursuant to Pa.R.C.P. 2252 ¶¶ 2, 7 [hereinafter Joinder Compl.]. Westwyk alleges Sabia's negligence included, *inter alia*, failing to remove all snow and ice, failing to presalt, and failing to monitor weather conditions. *Id.* ¶ 4 (c), (d), (h).

On June 6, 2013, Sabia filed the instant action in the Court of Common Pleas of Bucks County, alleging that, at all relevant times, it had a commercial general liability insurance policy with Merchants ("the Merchants policy"), that the Merchants policy obligates Merchants to defend and, if necessary, indemnify Sabia in the Gunderson action, and that Merchants improperly denied Sabia's claim for such coverage. Pl., Sabia Landscaping's, Compl. for Decl. J. Against Def., Merchs. Mut. Ins. Co. ¶¶ 4, 10, 14, *Sabia Landscaping v. Merchs Mut. Ins. Co.*, No. 2013-04340 (Ct. Com. Pl. June 10, 2013) [hereinafter Sabia Compl.]. Defendant removed the action to this Court on the basis of diversity of citizenship. 28 U.S.C. §§ 1332, 1441, 1446.

---

[2] Westwyk refers to Sabia as a "third-party defendant" in its Joinder Complaint, but the Pennsylvania Rules of Civil Procedure provide no such designation. Joinder Compl. ¶¶ 2, 3. Sabia should have been referred to as an additional defendant. *See* Pa. R. Civ. P. 2252(a).

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion to dismiss. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a plaintiff's allegations must show that a defendant's liability is more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### IV. DISCUSSION

**A. Defendant's Motion to Dismiss Plaintiff's Claim for Declaratory Judgment**

In Count One of its Complaint, Sabia seeks a declaratory judgment establishing (1) Merchants's duty to defend Sabia in the underlying action, (2) Merchants's duty to reimburse Sabia for the costs of defending the underlying action, and (3) Merchants's duty to indemnify Sabia for any damages for which it is found liable in that action. Compl. ¶ 16. The Court addresses each in turn.

     i. <u>Duty to Defend</u>

  An insurer's duty to defend is broader than its duty to indemnify. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 540 (Pa. 2010). "[T]he obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." *Erie Ins. Exch. v. Transamerica Ins. Co*, 533 A.2d 1363, 1368 (Pa. 1987). "In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). Accordingly, "the allegations raised in the underlying complaint alone fix the insurer's duty to defend." *Erie Ins. Exch. v. Claypoole,* 673 A.2d 348, 355 (Pa. Super. Ct. 1996). Once the insurer's duty to defend is triggered, the insurer has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover." *United Servs. Auto. Ass'n. v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986).

  Merchants argues that the allegations in Gunderson's Complaint do not come within Sabia's policy because an endorsement to its policy excludes coverage for bodily injury arising out of "completed" "snow plowing operations." Def.'s Mot. Ex. A. The coverage for the "products-completed operations hazard" defines work as "completed" at the earliest of three times:

> (a) When all the work called for in your contract has been completed,
>
> (b) When all the work completed at the job site has been completed if your contract calls for work at more than one job site, or
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

*Id.* The policy further states that "work that may need service, maintenance, correction, repair or

...

replacement, but which is otherwise complete, will be treated as completed." *Id.*

Merchants argues that Gunderson's injury occurred after Sabia's work was "complete," and therefore the exclusion applies. Merchants's argument centers around two documents attached as exhibits to Westwyk's Joinder Complaint[3]: (1) Sabia's snow removal contract with Westwyk and (2) an invoice submitted by Sabia for snow removal work on the day of Gunderson's injury. The Westwyk contract states that when there is snow fall of greater than six inches, Sabia must, *inter alia*, plow when accumulations reach five inches, continue to re-plow when accumulations again reach five inches, remove all snow once it stops snowing, and return the next day to re-plow and ensure that all traffic areas are free from slippery or icy conditions. Def.'s Mot. Ex. D. The invoice states that on December 20, 2009, the date of the accident in the Gunderson suit, Sabia performed snow removal operations at 5:00 a.m., plowing approximately 8.7 inches of snow, and again at 6:00 p.m., applying calcium to the ground due to blowing snow. *Id.* It further states that Sabia returned to resalt the following day, December 21, 2009. *Id.*

Merchants argues, based on the invoice, that Sabia's work was "complete" when Sabia performed snow removal operations at either 5:00 a.m. or 6:00 p.m. on December 20. Def.'s

---

[3] The parties do not address the question of whether, at the motion-to-dismiss stage, the Court may properly consider the Joinder Complaint or the two documents attached thereto. The general rule is that a court ruling on a motion to dismiss may not consider matters outside the pleadings without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). An exception to this rule provides that a Court may consider, on a motion to dismiss, documents which are "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted). Because Sabia's potential liability in the Gunderson action stems from its relationship with Westwyk, the Court concludes that Westwyk's Joinder Complaint is integral to Sabia's Complaint, and the Court will consider the factual allegations in the Joinder Complaint in addition to those in the Gunderson Complaint. Further, because Sabia's snow removal contract and the invoice are attached to the Joinder Complaint, they are properly considered by the Court in a motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")

Mot. 11. Thus, Merchant's argues that Gunderson's fall — which Gunderson alleges occurred around 8:40 p.m. on December 20 — occurred after Sabia's work was "complete." Def.'s Mot. 11. Sabia's application of calcium on December 21, Merchants argues, constitutes only "service, maintainence, [or] correction." Def.'s Rep. Br. 5.

The Court rejects Merchants's argument. The invoice, when read in a light most favorable to plaintiff, states only the times Sabia started work — not when that work was completed or when Sabia put the parking lot "to its intended use." Def.'s Mot. Ex. A, D. Further, reading Sabia's contract in the light most favorable to it reveals ongoing and as-needed obligations beyond mere "maintenance" or "correction." Def.'s Mot. Ex. D. (stating that Sabia must remove snow "once the storm has ended," "re-plow when snow accumulations again reach 5 [inches]" and return the following day to "ensure that all traffic areas are free from slippery or icy conditions"). These ongoing obligations mean Sabia has not completed "all the work called for in [its] contract," and thus potentially render Sabia's work incomplete even after stopping active snow removal operations. Def.'s Mot. Ex. A; *Emp'rs Ins. Co. of Wausau v. Harleysville Ins. Co. of N.J.*, No. 05-cv-4900, 2008 WL 4066329 (D.N.J. Aug. 26, 2008) (finding slip-and-fall injury four days after snow storm "arose out" of a snow removal company's "ongoing operations" because the company had an ongoing responsibility to salt but failed to do so); *Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 F. App'x 148 (2d Cir. 2006) (finding snow removal company engaged in "ongoing operations" for entire contract period because the contract required it to prevent standing water from freezing). Finally, the Gunderson Complaint alleges a failure to warn the public of slippery conditions; courts construing the "products-completed operations hazard" have found that work is not "complete" when that work includes a failure to warn. Gunderson Compl. ¶ 20(g); *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 89 (Pa.

Super. Ct. 2007) ("[T]he installation of the backup alarm's wiring was not completed at the time of the installation of the wiring because of the negligent failure to warn.").

Comparing the insurance policy to the allegations in the underlying complaint, the Court concludes that the claims asserted in the underlying complaint "may *potentially* come within the coverage of the policy." *Transamerica Ins. Co*, 533 A.2d at 1368. The Gunderson Complaint alleges that Westwyk and/or its agents were negligent in failing to prevent or remove ice accumulations or warn the public of slippery conditions. Gunderson Compl. ¶ 20 (a), (g). Furthermore, Westwyk's Joinder Complaint alleges that Sabia failed to remove all snow and ice, failed to presalt, and failed to monitor weather conditions. *Id.* ¶ 4 (c), (d), (h). If these factual averments are sustained, they potentially come within the coverage of the policy because they may have occurred before Sabia's work was "complete." For instance, if Gunderson or Westwyk adduce evidence showing that Gunderson slipped due to Sabia's negligent failure to remove all snow and ice, that the slip occurred prior to Sabia completing "all of the work called for in [Sabia's] contract," or that the slip occurred prior to putting the parking lot back to "its intended use,"[4] Sabia would be covered. Def.'s Mot. Ex. A. Accordingly, because the

---

[4] Defendant does not explain how this Court should interpret, in this context, the provision in the "products-completed operation hazard" definition stating that work is "complete" when "that part of the work done at a job site has been put to its intended use by any person . . . ." Def.'s Mot. Ex. A. Ostensibly, salting and plowing operations may be going on simultaneously with the "use" of the premises. Defendant in its initial brief argues, "After [Sabia] completed the snow removal services on the morning of December 20, 2009, control over the condominium parking lot returned to the underlying defendants. The follow-up reapplication of salt and calcium does not alter the fact that Sabia's snow removal services were completed." Def.'s Mot. 11. In its reply brief, defendant explains that the this provision does not require Sabia to be plowing at the moment of the accident, stating, "[I]f a third-party falls and is injured while Sabia is performing is [sic] snow removal operations *or before it has completed operations for the day*, as per the Snow Removal contract, then the Exclusion would not apply." Def.'s Rep. Br. 2-3. (emphasis added).

Plaintiff argues that Merchants's interpretation of the exclusion would render its coverage illusory but does not offer an alternative interpretation. Pl.'s Br. 10. Further, neither party has

underlying complaint "may *potentially* come within the coverage of the policy," the Court concludes Merchants has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover." *Transamerica Ins. Co.*, 533 A.2d at 1368; *Elitzky*, 517 A.2d at 985.

    ii. Duty to Reimburse

Sabia requests a declaratory judgment establishing Merchants's duty to reimburse it for attorney fees and costs incurred to date to defend the underlying action.[5] Sabia Compl. ¶ 16. "When an insurer erroneously denies its duty to defend, fulfillment of the duty requires the insurer to pay for any defense costs already incurred." *Kiewit E. Co., Inc. v. L & R Const. Co., Inc.*, 44 F.3d 1194, 1205 (3d Cir. 1995). Having determined that Merchants has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover," *Elitzky*, 517 A.2d at 985, Sabia is entitled to reimbursement for attorney's fees and costs incurred to date in defending against the Gunderson action.

---

pointed to a case construing this provision in the context of snow removal. Other courts construing this provision have not encountered situations such as this one, where the premises may be used for their intended purpose simultaneously with the insured performing work. *See e.g.*, *Fireman's Fund Ins. Co. v. Zurich Am. Ins. Co.*, No. 10-cv-4293, 2011 WL 2937421 (E.D. Pa. July 19, 2011) (elevator put to intended use). This question need not be resolved at this stage of the litigation, however, since the allegations in the Gunderson Complaint may "potentially" be covered under even the narrowest interpretation of this clause, which would require Sabia's active, ongoing snow removal operations in order to trigger coverage.

[5] Sabia's Complaint, in paragraph 16, requests a declaratory judgment for "the amount necessary to defend the underlying action," thus suggesting Sabia will defend the entire action and then seek reimbursement for its attorney's fees and costs. Sabia's Complaint requests relief, however, in the form of "an Order declaring that the Defendant . . . has the duty to defend and indemnify Plaintiff . . . from the allegations made . . . plus all attorney [sic] fees and costs incurred to date." Sabia Compl. at 4. Since the Court concludes Merchants has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover," *Elitzky*, 517 A.2d at 985, Merchants must pay the cost of defending the Gunderson suit until that time. Sabia is entitled to any attorney's fees and costs incurred to date.

### iii. Duty to Indemnify

Sabia also requests a declaratory judgment establishing Merchants's duty to indemnify Sabia for any damages for which it is found liable as a result of the Gunderson action. Sabia Compl. ¶¶ 15, 16. It is well-settled under Pennsylvania law that an insurer must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy. *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1094 (E.D. Pa.) *aff'd*, 37 F.3d 1485 (3d Cir. 1994). Thus, "a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." *TDY Indus. Inc. v. Nat'l Freight Transp. Inc.*, No. 07-cv-984, 2009 WL 691947 at *11 (W.D. Pa. March 12, 2009); *C.S. v. Colony Ins. Co.*, 12 Pa. D. & C.5th 171, 181-82 (Pa. Com. Pl. 2010) (collecting cases). For that reason, Merchants's Motion to Dismiss Count One is denied without prejudice to defendant's right to file a motion for summary judgment if Sabia is found liable in the Gunderson action.

### B. Defendant's Motion to Dismiss Plaintiff's Breach-of-Contract Claim

In Count Two of its Complaint, Sabia alleges Merchants breached its contract by "improperly denying and/or disclaiming coverage" and, as a result, Sabia has been forced to "spend money to defend itself" in the Gunderson action. Sabia Compl. ¶¶ 21-22. As previously discussed, an insurance company has a duty to defend an insured "whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." *Transamerica Ins. Co.*, 533 A.2d at 1368. An insurer which refuses to defend the insured in such situations breaches this obligation and "gives rise to a cause of action regardless of the good faith of the insurer." *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320 (Pa. 1963) (citing *King v. Auto. Underwriters, Inc.*, 187 A.2d 584 (Pa. 1963)). Accordingly, because Sabia has stated a

9

claim against Merchants for failing to defend the Gunderson suit, Merchants's motion to dismiss Sabia's breach of contract claim is denied.

### C. Defendant's Motion to Dismiss Plaintiff's Bad Faith Claim

In Count Three of its Complaint, Sabia alleges bad faith on behalf of Merchants pursuant to Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371.  To state a cause of action for bad faith, plaintiff must demonstrate "that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim."  *Terletsky v. Prudential Prop. & Cas. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Courts have found several actions may constitute bad faith, including: "(1) a frivolous or unfounded refusal to pay; (2) a failure to investigate into the facts; or (3) a failure to communicate with the insured."  *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 140 (E.D. Pa. 2007).

Sabia alleges Merchants acted in bad faith by: "(a) not attempting in good faith to effectuate the prompt, fair, and equitable settlement of Plaintiff, Sabia's, claim where Defendant's statutory and contractual duty to do so is reasonably clear"; "(b) failing to respond to Plaintiff, Sabia's, claim for benefits within a reasonable amount of time"; "(c) failing to adequately investigate Plaintiff, Sabia's, claim for benefits prior to denying [Sabia's] claims"; "(d) compelling insured to seek legal redress by forcing Plaintiff, Sabia, to defend [the Gunderson action]"; and "(e) failing to timely provide a reasonable explanation of the basis for the denial of Plaintiff, Sabia's claim for benefits."  Sabia Compl. ¶ 27(a)-(e).  Merchants argues Sabia's allegations are "wholly devoid of any factual allegations."  Def.'s Mot. 13.  In response, Sabia argues it has alleged specific dishonest conduct and need not set forth specific facts at the pleading stage.  Pl.'s Resp. 12.

The Court concludes that plaintiff's allegations, when read in conjunction with the entire Complaint, sufficiently state a claim for bad faith on the basis of "a frivolous or unfounded refusal to pay." *Hanover Ins. Co.*, 619 F. Supp. 2d at 140. Sabia has alleged that "as a result of the underlying claim . . . [it] submitted a claim . . . which was improperly denied," and that Merchants "has refused to pay any part" of its defense costs despite "repeated demands to be reimbursed." Sabia Compl. ¶¶ 14, 22, 23. Accepting plaintiff's allegations as true, and construing them in a light most favorable to plaintiff, the Court concludes that plaintiff's allegations sufficiently state that Merchants "did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky*, 649 A.2d at 688. Accordingly, Merchants's motion to dismiss Sabia's bad faith claim is denied.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Merchants's motion to dismiss plaintiff's complaint and determines that Merchants has a duty to defend "until such time that the claim is confined to a recovery that the policy does not cover," *Elitzky*, 517 A.2d at 985. Sabia is entitled to reimbursement for attorney fees and costs incurred to date in defending against the Gunderson action. An appropriate order follows.